**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY CROCKETT, | |
| Plaintiff, | |
| v. | Civil Action No. 8:13-cv-00261-AW |
| SRA INTERNATIONAL, | |
| Defendant. | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Kimberly Crockett is an African-American female who resides in Maryland. Defendant SRA International is an international corporate and government consulting company that does business in Maryland. Plaintiff worked for Defendant from September 2003 until August 2011.

In 2003, Defendant hired Plaintiff as a senior member of the professional staff. In June 2005, Plaintiff became a project manager, though retaining the classification of senior member. Plaintiff met or exceeded all company benchmarks and performance requirements in these capacities. However, Defendant did not promote Plaintiff to principal in 2005–2006. The classification of principal is one step above a senior member.

1

Plaintiff grew concerned about Defendant's failure to promote her. In May 2006, she told Shirl Jenkins, vice president of human resources, that very few African Americans advanced to the level of principal. Jenkins "acknowledged that the promotion of African Americans and Asians was a problem at SRA." Doc. No. 2 ¶ 21.

Plaintiff's concerns were relayed to Don Hirsch, Defendant's vice president. Hirsch met with Plaintiff. Hirsch "acknowledged that SRA had very few African Americans at the Principal level, and was personally able to identify only one." *Id.* ¶ 26. Plaintiff told Hirsch that she believed she deserved to be promoted to principal.

Following the meeting, on or about May 9, 2006, Jenkins sent Plaintiff an email stating that Hirsch had told her that someone had written a principal recommendation for Plaintiff in 2005 but that "corporate" failed to receive the nomination. The day after, Hirsch met with Plaintiff and told her that he had just found the principal nomination form, which was unsigned and undated. The form gave Plaintiff a very favorable recommendation.

Based on this discovery, Defendant gave Plaintiff a $2,000 raise. Plaintiff alleges that she would have received more compensation had Defendant "fairly and timely promoted her to Principal." *Id.* ¶ 30.

Defendant promoted Plaintiff to principal in 2007. Plaintiff alleges that Defendant should have promoted her to principal in 2005–2006, and that she "lost many interim opportunities for advancement and development." *Id.* ¶ 31.

Starting in October 2007, Plaintiff alleges that Defendant began to harass her. From October 2007 to April 2009, Plaintiff served as a project manager for a "NARA contract" as a principal. During this period, Plaintiff alleges that Defendant ignored another employee's efforts to drive her off of the NARA project by plotting against her and micromanaging her work.

Plaintiff adds that the employee did not treat non-African Americans in a similar manner. Thereafter, in September 2009, Plaintiff alleges that Defendant assigned her to an undesirable contract with the DOJ.

From February 2010 to March 2011, Plaintiff, as principal, served as project manager for an "FDIC contract." In this role, Plaintiff alleges that Defendant harassed her by: (i) giving her inadequate "bench support and support for team integration"; (ii) excluding her from project meetings and withholding important information; (iii) failing to "consider her recommendations"; and (iv) generally marginalizing her on the project. *Id.* ¶ 34.

On January 5, 2011, Robert Smallwood, Plaintiff's supervisor on the FDIC contract, asked Plaintiff to present on the FDIC contract. Plaintiff alleges that Smallwood sabotaged her presentation by making her discuss content[1] that Defendant's protocols prohibited. An FDIC representative halted Plaintiff's presentation based on its inappropriate content . On January 11, 2011, another FDIC representative told Plaintiff the same. Smallwood eventually admitted that "more preparation work should have been done prior to the meeting." *Id.* ¶ 37. After consulting at least one higher-up, Smallwood ordered Plaintiff to terminate her involvement with the FDIC contract effective March 18, 2011.

Consequently, Plaintiff "was left without an ongoing assignment." *Id.* ¶ 40. Although Plaintiff had difficulty securing other assignments, she eventually accepted a "diminished role on a National Security Team Project." *Id.* ¶ 41. In this role, Mark Tramontozzi, a senior principal, contacted Kurt Bolland, the manager of the National Security project, "and made several false and disparaging remarks" concerning Plaintiff's work ethic. *Id.* Plaintiff adds that she had discussed her problems with Smallwood to Tramontozzi and alleges that Tramontozzi's actions appeared to be part of a conspiracy to deny her the same opportunities as her non-African-

---

[1] Plaintiff does not suggest that this content was lewd, obscene, racist, or otherwise patently offensive.

American coworkers. In August 2011, Plaintiff "eventually sought and found employment elsewhere." *Id.* ¶ 42.

Plaintiff alleges that she filed a complaint with the Maryland Commission on Human Relations[2] (the Commission) on July 11, 2011. Plaintiff's letter is similar in substance to her Complaint, identifies Defendant as her employer, and includes exhibits purporting to support her complaint, such as the unsigned nomination form mentioned above. Plaintiff's complaint does not contain Defendant's address, however, and Defendant declares that it did not receive notice of Plaintiff's administrative complaint until January 11, 2013, when it received service of the Summons and Complaint. Doc. No. 16-1. Although the Parties dispute whether Plaintiff formally filed a complaint with the Commission, the record reflects that, at least to a certain extent, the Commission investigated Plaintiff's complaint. *See* Doc. No. 11-2; Doc. No. 14-3.

On November 27, 2012, Plaintiff filed a Complaint in the Circuit Court for Prince George's County, Maryland. Doc. No. 2. Plaintiff asserted claims for racial discrimination and retaliation under the Maryland Fair Employment Practices Act (MFEPA), along with a constructive discharge claim. Defendant then removed the case to this Court on the basis of diversity. Defendant filed its Motion to Dismiss on February 15, 2013. Doc. No. 11. Defendant argues that Plaintiff's claims are barred on failure-to-exhaust grounds. Alternatively, Defendant argues that Plaintiff has failed to state cognizable claims. The Parties have completed briefing on Defendant's Motion to Dismiss.

---

[2] The Maryland Commission on Human Relations has changed its name to the Maryland Commission on Civil Rights.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss—12(b)(1)

"A failure by a plaintiff to exhaust administrative remedies concerning . . . [a] Title VII claim deprives the courts of subject matter jurisdiction over the claim." *Rhodes v. Montgomery Cnty. Dep't of Corrs. & Rehab.*, Civil Action No. 12–cv–03172–AW, 2013 WL 791208, at *7 (D. Md. Mar. 1, 2013) (citations omitted). "Courts may consider materials outside the pleadings to determine whether they have subject matter jurisdiction." *Bennett v. Kaiser Permanente*, Civil Action No. 10–CV–2505 AW, 2013 WL 1149920, at *2 (D. Md. Mar. 20, 2013) (citation omitted).

### B. Motion to Dismiss—12(b)(6)

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See*

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.    LEGAL ANALYSIS

### A.    Failure to Exhaust

Defendant argues that the Court should dismiss Plaintiff's claims because Plaintiff failed to file an administrative charge. Defendant also argues that Plaintiff cannot rely on many of her allegations because (1) they occurred too long before she filed her purported charge and (2) MFEPA's statute of limitations time-bars them.

Plaintiffs may bring civil actions alleging violations of the MFEPA subject to several preconditions. *See* Md. Code Ann., State Gov't § 20-1013(a). Plaintiffs must initially file "a timely administrative charge or a complaint." *Id.* § 20-1013(a)(1). For a charge or complaint to be timely, plaintiffs must file it "within 6 months after the date on which the alleged discriminatory act occurred." *Id.* § 20-1004(c). Furthermore, plaintiffs must wait at least 180 days from the filing of the charge or complaint to file suit. *Id.* § 20-1013(a)(2). Additionally, plaintiffs must commence their civil action "within two years after the alleged unlawful employment practice occurred." *Id.* § 20-1013(a)(3).

Maryland law imposes specific requirements on the form and content of an administrative charge or complaint. *See id.* § 20-1004(b). Under section 20-1004(b), the complaint shall (1) be in writing; (2) state the name and address of the person alleged to have committed the

discriminatory act; (3) contain any other information the commission requires; and (4) be signed by the plaintiff under oath. *Id.*; *see also* COMAR 14.03.01.03(D)(7) (providing that "[e]ach complaint shall contain substantially" "[t]he name and address of the respondent").

In this case, Plaintiff has satisfied her burden of showing that she filed an administrative complaint of discrimination. Plaintiff's complaint is in writing, relatively detailed, and identifies Defendant. Although Defendant generally agrees with these observations, Defendant insists that Plaintiff's complaint is invalid because its fails to provide Defendant's address. Based on this omission, Defendant contends that it did not receive proper notice of Plaintiff's administrative complaint. As a consequence, Defendant suggests that it could not take steps to potentially resolve the matter out of court. Although the record reflects that Defendant did not receive timely notice of the administrative complaint, Plaintiff's counsel declares that the Commission initiated an investigation in response to the same, going so far as to interview Plaintiff over the phone regarding her complaint. Based on Plaintiff's counsel's uncontested declarations, it is reasonable to infer that the Commission had ample opportunity to locate Defendant's address on its own or, minimally, to ask Plaintiff to supplement her complaint. The record reflects, however, that the Commission did not take these steps and, instead, declined to process Plaintiff's complaint due to extraneous procedural considerations. Furthermore, it is unclear what, if any, steps Defendant might have taken had it received notice of Plaintiff's administrative charge, and Defendant has identified no other potential prejudice resulting from its lack of proper notice. Thus, under the unique confluence of circumstances this case presents, Plaintiff has "substantially" complied with the dictates of the MFEPA and its implementing regulations regarding the form and content of an administrative complaint. *Cf.* COMAR 14.03.01.03(D)(7).

The next issue is whether Plaintiff's complaint is timely. This requires the Court to consider whether Plaintiff filed it within six months of the alleged discriminatory act and whether Plaintiff has commenced this action within two years of the alleged discriminatory act. Plaintiff filed her administrative complaint on July 11, 2011. Therefore, Plaintiff cannot rely on acts that occurred before January 11, 2011. Consequently, at a minimum, the Court will not consider allegations from before the February 2010 to March 2011 period. Likewise, as Plaintiff filed her Complaint on November 27, 2012, any allegations before November 27, 2010 are time-barred. However, as the administrative cutoff of January 11, 2011 falls after November 27, 2010, this outcome is academic.[3]

Plaintiff counters that acts that took place before July 11, 2011 are part of a continuing violation. "The continuing violation theory (a type of equitable tolling) applies where the plaintiff proves that it would have been impossible for a reasonably prudent person to learn that [an employment action] was discriminatory." *Lewis v. MV Transp., Inc.*, Civil Action No. 8:12–cv–00983–AW, 2012 WL 4518541, at *4 (D. Md. Sep. 28, 2012) (alternations in original) (citation and internal quotation marks omitted). "Generally, [s]uch impossibility exists only where the plaintiff is unaware of the facts giving rise to the claim because the defendant has intentionally concealed them." *Id.* (alternation in original) (citation and internal quotation marks omitted).

In this case, Plaintiff has inadequately alleged the existence of a continuing violation. Although Plaintiff argues that Defendant continually discriminated against her, a close examination of her Complaint reveals that she alleges five distinguishable instances of

---

[3] For good measure, any acts before October 1, 2007 may be time-barred as well because the MFEPA took effect on October 1, 2007 and does not apply retroactively. *See Vaeth v. Bd. of Trs., Fire & Police Emps. Ret. Sys. of Balt. City*, Civil Action No. RDB-08-708, 2009 WL 2487076, at *4 (D. Md. Aug. 11, 2009).

discrimination: (i) Defendant's failure to promote her in 2005–2006; (ii) an employee's plotting against her with respect to the NARA contract in October 2007; (iii) being assigned to an "undesirable" DOJ contract in 2009; (iv) Defendant's marginalization of her with respect to the FDIC contract in February 2010 to March 2011; (v) the January 2011 incidents in which two people told her that she made a poor presentation with respect to the FDIC contract; and (vi) a subsequent incident in which an employee criticized her work ethic. As for Plaintiff's failure-to-promote allegations, the Fourth Circuit has held that "[b]ecause failure to promote is a discrete act of discrimination, the continuing violation doctrine does not apply . . . and cannot save [Plaintiff's] untimely claims." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (citations omitted). Furthermore, the alleged instances of retaliatory conduct commencing in 2007 do not "involve the same type of discrimination" as the alleged failure to promote, which weighs against the existence of a continuing violation. *See Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 593 (D. Md. 2000) (citations omitted). Additionally, the five instances of alleged discrimination following the 2005–2006 failure to promote are too distinct from each other in terms of time and content to constitute a continuing violation. In short, Plaintiff's allegations fail to support a plausible inference that she was unaware of the facts giving rise to her claim until July 2011 or that Defendant's conduct was otherwise part of a continuing violation. Accordingly, the Court declines to consider acts before January 11, 2011.

**B.     Discrimination**

Plaintiff has presented her discrimination claim in equivocal fashion. In her Complaint, Plaintiff explicitly alleges that she brings her discrimination claim under § 20-606(a)(1)(i) of the State Government Article. Modeled on Title VII, this provision prohibits discrimination in an individual's compensation or the terms, conditions, or privileges of employment because of race.

*See* Md. Code Ann., State Gov't § 20-606(a). However, in her Opposition, Plaintiff couches her discrimination claim as a wage discrimination claim pursuant to section 20-607(a). The latter provision generally provides that it is unlawful for an employer to adopt discriminatory pay practices. *See id.* § 20-607(a). To complicate matters, Plaintiff later argues in her Opposition that her discrimination claim is neither a failure-to-promote claim nor a wage discrimination claim but a generalized discrimination claim. *See* Doc. No. 14 at 15–16.

Plaintiff's racial discrimination claim is not cognizable irrespective of its type or the theory under which she proceeds. To the extent Plaintiff asserts a failure-to-promote claim, it fails for a variety of reasons. For one, Plaintiff cannot rely on acts that took place before January 11, 2011. This result is fatal to Plaintiff's failure-to-promote claim because all the alleged facts that purport to support this claim took place before this date. Furthermore, Plaintiff has inadequately alleged the elements of a failure-to-promote claim. To make out a prima facie case of racial discrimination in the failure to promote, Plaintiff must show that (1) she is a member of a protected group, (2) she applied for the promotion, (3) she was qualified for the promotion, and (4) Defendant failed to promote her under circumstances that give rise to an inference of unlawful discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted). Assuming arguendo that Plaintiff has satisfied the first three elements, Plaintiff's allegations fail to sustain a plausible inference that Defendant failed to promote her under circumstances giving rise to an inference of unlawful discrimination. After all, Plaintiff alleges that Defendant gave her a pay raise and eventually promoted her to principal. And, although Plaintiff alleges that African Americans were underrepresented at the principal level, this allegation is too vague and isolated to support a plausible inference of discrimination. Absent supporting allegations, it is equally possible that any number of nondiscriminatory

factors caused this disparity (e.g., lack of candidates, qualifications, or positions). Nor does Plaintiff adequately allege offensive remarks, the existence of comparators, "me too" evidence, or any other words or acts probative of racial animus. Accordingly, Plaintiff has not stated a facially plausible failure-to-promote claim.

"To state a wage discrimination claim under [section 20-607], a plaintiff must demonstrate that she is 'a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by [non-African Americans].'" *See Alexander v. Marriott Intern., Inc.*, No. RWT 09cv2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (quoting *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir.1994)). To establish that jobs are similar, Plaintiff must adequately allege "any parallels between her job responsibilities and those of her [non-African American] co-workers," including "her daily tasks, her level of accountability, her skills and experience, or any other aspect of her job [relative] to her purported male comparators." *See id.*

In this case, although Plaintiff is in a protected class, her allegations fail to sustain a plausible inference that she received unequal pay despite working the same job as non-African Americans. Regarding her tenure as both senior member and principal, Plaintiff does not identify any non-African American comparators or allege any parallels between her job responsibilities and theirs, including her daily tasks, level of accountability, and skills and experience. Nor do Plaintiff's allegations support the inference that Plaintiff received lower pay than other senior members or principals when she occupied those respective positions. Although Plaintiff broadly alleges that Defendant compensated "her less than non-African American peers who were performing comparable work," Doc. No. 2 ¶ 47, this is a conclusory factual allegation devoid of any reference to actual events. Likewise, although Plaintiff alleges that she lost out on

compensation because of the 2005–2006 failure to promote, whatever economic harm Plaintiff allegedly incurred as a result of the failure to promote is analytically distinct from a wage discrimination claim. *See, e.g.*, *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010) (decision whether to promote employee to higher-paying position fails to implicate wage discrimination under fair pay precepts). Finally, the acts on which Plaintiff relies to establish her wage discrimination claim are time-barred and are not subject to equitable tolling. *See supra* Part II.A; *see also Hylind v. Xerox Corp.*, 481 Fed. App'x 819, 824 n.2 (4th Cir. 2012) (citations omitted). Consequently, Plaintiff's wage discrimination claim fails as a matter of law.[4][5]

For the foregoing reasons, the Court dismisses Plaintiff's racial discrimination claim. This dismissal is with prejudice. Many of Plaintiff's allegations are time-barred. Moreover, Plaintiff filed an 18-page Complaint that is similar to her administrative complaint. This being so, extending Plaintiff leave to amend her Complaint portends only further futility.

**C.    Retaliation**

To establish her prima facie case of retaliation, Plaintiff must show that she engaged in protected activity, that Defendant took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment activity. *See King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003).

"An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (2011) (citing *Davis*

---

[4] Plaintiff's racial discrimination claim also fails to the extent the Court treats it has a hybrid failure-to-promote/wage discrimination claim or as a generalized racial discrimination claim. Even if the bulk of Plaintiff's allegations were not time-barred, Plaintiff has not pleaded sufficient facts from which one could plausibly infer that Defendant unlawfully discriminated against her.

[5] Plaintiff's state law racial discrimination claim is judged under the same standards as Title VII. *See, e.g., Blakes v. City of Hyattsville*, Civil Action No. 10–CV–3585 AW, 2012 WL 5566784, at * 11 (D. Md. Nov. 14, 2012) (citations omitted).

*v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616–17 (D. Md. 2009)). "One court has defined opposition as 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Davis*, 639 F. Supp. 2d at 617). "For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct that she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nash. and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). Alternatively, "it is unlawful 'for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"*Breeden*, 532 U.S. at 269 (alteration in original) (quoting 42 U.S.C. § 2000e–3(a)).

For an act to be adverse within the meaning of Title VII's antiretaliation provision, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). This standard is objective and, to a significant extent, depends on the facts and circumstances of each case. *See id.* at 68–69.

Element three of the prima facie case for retaliation relates to causation. Generally, plaintiffs demonstrate that the alleged opposition caused the at-issue adverse action through two evidentiary routes. First, plaintiffs may show that the adverse act bears sufficient temporal

proximity to the protected activity. *See, e.g.*, *Breeden*, 532 U.S. at 273–74. Second, as this Court has consistently held, "plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (citing cases); *see also, e.g.*, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).

In this case, Plaintiff has failed to state a facially plausible retaliation claim. Due to Plaintiff's failure to exhaust, the story picks up absolutely no earlier than the February 2010 to March 2011 period during which she alleges that Defendant generally marginalized her on the FDIC contract. During this period, two persons criticized Plaintiff's presentation and Defendant removed Plaintiff from the FDIC project. After struggling to find other assignments, Plaintiff accepted a "diminished role" on a different project in relation to which a superior disparaged her work ethic. Eventually, on or after January 2011, Plaintiff resigned. Based on these allegations, one could not plausibly infer that Plaintiff could satisfy any of the elements of the prima facie case for retaliation. As Plaintiff did not complain about discrimination during this period, there is no protected activity. Insofar as one could infer a complaint, the allegations fail to support the inference that Plaintiff had a reasonable belief that Defendant had violated MFEPA. Nor do these allegations plausibly support the inference that Defendant took adverse action against Plaintiff. Although Plaintiff alleges that she was removed from a project and accepted a "diminished role" on another, no allegations link this action to any allegedly protected activity. Furthermore, these allegations are vague and fail to create a plausible inference that Plaintiff's role on the National Security project was so less prestigious and/or more arduous than her previous role that this transition would dissuade a reasonable worker from making or supporting a charge of

discrimination. *Cf. Burlington*, 548 U.S. at 68 (citation omitted). Causation is not present for similar reasons.

Plaintiff's retaliation claim would fail even if the Court considered all of her allegations. Plaintiff's May 2006 complaint about perceived discrimination is the only protected activity that Plaintiff has alleged or identified. *See* Doc. No. 14 at 23–24. Yet Plaintiff avers that the allegedly retaliatory conduct did not start until October 2007, which is no earlier than four months after she complained about discrimination. Standing alone, however, temporal proximity of four months is insufficient to suggest causation. *See, e.g.*, *Breeden*, 532 U.S. at 273 (indicating that a "3–month period [is] insufficient"). Moreover, Plaintiff does not offer any other allegations probative of a retaliatory animus. On the contrary, Plaintiff alleges that Defendant gave her a pay raise and promoted her to principal after her protected activity but before the October 2007 start of the alleged recurring instances of retaliation. These allegations plainly undercut any inference that Defendant retaliated against Plaintiff because she complained about Defendant's prior failure to promote her to principal. *Cf. Thompson v. Kelso*, No. 96-2224, 1997 WL 570870, at *1 (4th Cir. Sep. 16, 1997) (holding that employee failed to prove retaliation where the record established that he had routinely been held in high regard and had been promoted after having filed an EEO complaint). Additionally, Plaintiff's vague allegations fail to plausibly support the inference that the alleged instances of retaliation in the October 2007 to January 2011 period constitute materially adverse acts. Even construed in the most favorable light, the allegations do no more than to suggest that Plaintiff was dissatisfied with her job and her employer's evaluation of her and had a hard time getting along with people. *Cf., e.g.*, *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (being "ostracized" by other employees is not an adverse employment action); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004)

(citation omitted) ("The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action."); *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (allegations that employee was "yelled at for complaining about his discriminatory treatment and 'criticized' . . . are not materially adverse actions"); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 601 (D. Md. 2011) (citations and internal quotation marks omitted) (disagreement with the "management style or decisions" of supervisors and "shifting job responsibilities" amounting to a "mere inconvenience or an alteration" are not materially adverse actions).[6]

For these reasons, the Court dismisses Plaintiff's retaliation claim. As with her discrimination claim, this dismissal is with prejudice.

## D. Constructive Discharge

Plaintiff also has asserted a claim for constructive discharge. "The identification of a 'claim' for constructive discharge is . . . flawed." *Baker v. Baxa Corp.*, Civil Action No. 09–cv–02034–MSK–KLM, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011). "The doctrine of constructive discharge arises when an employer allows unlawful discrimination or harassment to rise to such a level that a reasonable employee would have no choice but to elect to resign, rather than continue to endure it." *Id.* (citing *Narotzky v. Natrona Cnty. Mem'l Hosp.*, 610 F.3d 558, 565 (10th Cir. 2010)). "If the requisite elements of constructive discharge are demonstrated, the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer." *Id.* "This fiction can satisfy the element of an adverse employment action in a substantive claim, but it does not constitute a claim by itself." *Id.* "Thus, like doctrine of respondeat superior, constructive

---

[6] Plaintiff's state law retaliation claim is judged under the same standards as Title VII. *See, e.g.*, *Bishop v. Bd. of Educ. of Calvert Cnty.*, Civil Action No. DKC 11–1100, 2011 WL 2651246, at *9 (D. Md. July 5, 2011) (citations omitted).

discharge is not a standalone 'claim.'" *Id.* At least two judges in this District, including this Court, have embraced the *Baker* court's view. *See Rosa v. Bd. of Educ. of Charles Cnty., Md.*, Civil Action No. 8:11–cv–02873–AW, 2012 WL 3715331, at *10 (D. Md. Aug. 27, 2012) ("Constructive discharge is not a claim per se."); *Reed v. Action Prods., Inc.*, Civil No. 12–409–JKB, 2012 WL 2711051, at *2 (D. Md. July 6, 2012) (citation omitted) ("Constructive discharge . . . is not an independent basis for relief . . . ."). Moreover, numerous federal circuit and district courts have come to the same conclusion.[7] For this reason alone, given the dismissal of Plaintiff's other claims, Plaintiff's self-styled constructive discharge claim fails as a matter of law.

Furthermore, Plaintiff's constructive discharge claim would fail even if it were a freestanding cause of action. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Blakes*, 2012 WL 5566784, at *5 (citation and internal quotation marks omitted). "A plaintiff must prove (1) deliberateness of the employer's action and (2) intolerability of the working conditions." *Id.* (citation and internal quotation marks omitted). "Constructive discharge claims

---

[7] *Doscher v. Swift Transp.*, 498 Fed. App'x 724, 725 (9th Cir. 2012) (citation omitted) (applying Washington law) ("constructive discharge is not a separate cause of action"); *Dickens v. Dep't of Consumer and Regulatory Affairs*, 298 Fed. App'x 2, 3 (D.C. Cir. 2008) ("constructive discharge is not a cause of action in its own right"); *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004) ("constructive discharge is not itself a cause of action"); *Jeanes v. Allied Life Ins. Co.*, 300 F.3d 938, 942 (8th Cir. 2002) (applying Iowa law) ("constructive discharge is not a free-standing cause of action"); *Steffes v. Pepsi-Cola Pers., Inc.*, 25 Fed. App'x 300, 305 n.4 (6th Cir. 2001) (citation and internal quotation marks omitted) (applying Michigan law) ("constructive discharge is not in itself a cause of action"); *Gavin v. Liberty Mut. Grp. Inc.*, Civil No. 11–cv–159–LM, 2012 WL 3839345, at *4 (D.N.H. Sep. 5, 2012) (citing cases) ("constructive discharge is not a cause of action"); *Vails v. United Cmty. Health Ctr., Inc.*, No. C11–4048–LTS, 2012 WL 6045941, at *7 n.4 (N.D. Iowa Dec. 5, 2012) (applying Iowa law) ("constructive discharge by itself does not give rise to a cause of action").

are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff has insufficiently stated that her working conditions were intolerable. As noted above, Plaintiff's allegations do no more than to suggest that Plaintiff was dissatisfied with her job and her employer's evaluation of her and found it difficult to get along with her superiors. However, as this Court has held, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not [so] intolerable as to compel a reasonable person to resign." *Id.* (first alteration in original) (citation and internal quotation marks omitted). Furthermore, even if Plaintiff's allegations supported an inference of intolerability, they fail to indicate that Defendant deliberately created the intolerable conditions. Accordingly, the Court dismisses with prejudice Plaintiff's constructive discharge claim.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss. A separate Order that closes the case with prejudice follows.

| May 1, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |